UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL KEVIN FREDERICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:17-CV-021-JD |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

In August 2011, Michael Kevin Frederick was working as a self-employed data communications systems (satellite/cable) installer when he fell eight feet causing injury to his left hand, wrists, elbows, shoulders, knees, neck, and back. In January 2013, he applied for disability insurance benefits alleging disability as of the date of his accident. (R. at 258-59, 276-290). After holding two hearings, the administrative law judge ("ALJ") disagreed and found that jobs existed which Mr. Frederick was capable of performing. The Appeals Council denied Mr. Frederick's request for review. Mr. Frederick then filed this action seeking judicial review of that decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

## I. FACTUAL BACKGROUND

Ever since his fall, Mr. Frederick has consistently sought treatment from various doctors and specialists for his multiple injuries while presenting with complaints of ongoing pain. He initially sought treatment from Dr. Anthony McPherron in 2011 through December 2012, whose

medical records reflect that despite medication management and physical therapy, Mr. Frederick continued to experience pain. (R. at 652-87).

Mr. Frederick was referred to an orthopedic surgeon, Dr. Thomas Magill, who recommended surgery for his left shoulder based on MRI results and recommended only occupational therapy for his left hand. (R. at 352-70). On January 19, 2012, Dr. Magill performed a left shoulder arthroscopy with arthroscopic bankart repair. Thereafter, Mr. Frederick engaged in several months of physical/occupational therapy (R. at 390-584), yet he continued to report pain in his left shoulder, left hand, wrists, neck, and knees. An arthrogram and MRI of his left shoulder revealed post-operative changes and mild tendinopathy of the supraspinatus. (R. at 373). Thereafter, Dr. McPherron performed a manipulation of Mr. Frederick's left shoulder, after which, Mr. Frederick continued to experience pain, numbness, and tingling. (R. at 654-60).

In the second half of 2012, Mr. Frederick sought treatment from orthopedists Dr. Adelbert Mencias and Dr. Todd Graham because he continued to experience pain. Dr. Mencias performed a left cubital tunnel release and right wrist steroid injections for Mr. Frederick's cubital tunnel syndrome. (R. at 585-92, 628-51).

In 2013, Mr. Frederick sought treatment from general practitioner, Dr. Walter Fritz. (R. at 697-98, 741-44, 762-66, 769-78, 799-803). Records indicate that Mr. Frederick was prescribed a host of medications including Lyrica, Mobic, Hydrocodone, Restoril, Zanaflex, Ultram, Wellbutrin, and Norco. The pain medication caused Mr. Frederick to feel distracted and "in a fog" to the point where he avoided driving. (R. at 297-303).

Dr. Fritz referred Mr. Frederick to board certified anesthesiologist, Dr. Barry Ring, for pain management. (R. at 705-40). In February 2013, Dr. Ring reviewed Mr. Frederick's various laboratory results and examined Mr. Frederick. The examination indicated that Mr. Frederick

tested positive for pain in his shoulders, knees, left hand, and back. Dr. Ring reported that an MRI showed a disc bulge in Mr. Frederick's neck and that a left wrist brace was prescribed. Dr. Ring required Mr. Frederick to be off of work until further evaluation. An April nerve conduction study revealed bilateral ulnar neuropathies at the elbows and bilateral low cervical radiculopathies. Mr. Frederick underwent trigger point cervical steroid injections. As of July, Mr. Frederick was still reporting little relief from the pain.

Dr. Fritz's medical records show that Mr. Frederick continued to experience pain and stiffness in his neck with radiation to both shoulders, along with pain in his knees, wrists, and left hand. He documented that Mr. Frederick suffered from a decreased range of motion in his neck and left shoulder, and a decreased grip strength in his left hand. From early 2013 through late 2015, Dr. Fritz consistently opined that future employment was unlikely for Mr. Frederick as he was "completely disabled." Dr. Fritz completed physical residual functional capacity ("RFC")[1] assessments in October 2013, January 2015, and August 2015 (R. at 741-44, 762-65, 799-803) revealing that Mr. Frederick suffered from dizziness, fatigue, and pain in his shoulders, arms, hands, knees, and neck which limited his ability so much so that he was rendered disabled.

In early 2014, neurosurgeon, Dr. Michel Malek reviewed Mr. Frederick's MRIs. (R. 745-51). Dr. Malek found that the cervical MRI confirmed evidence of herniation consistent with Mr. Frederick's symptoms. The lumbar spine MRI showed slight desiccation and retrolisthesis, and evidence of an annular tear on the right at L5-S1. An EMG/nerve study showed chronic L5-S1 radiculopathy. Surgery to the lumber and cervical spine was an option but Dr. Malek wanted Mr.

---

[1] Residual Functional Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

Frederick to get a second opinion. Dr. Malek opined that Mr. Frederick needed to remain off work, subject to later reassessment.

Meanwhile, physical consultative examiners opined that Mr. Frederick was capable of performing at least sedentary work with restrictions (R. at 691-93, 791-97), non-examining state agents opined that Mr. Frederick was capable of performing light work with restrictions (R. 142-62), and an independent medical expert ("ME") testified that Mr. Frederick was capable of performing light work with restrictions. (R. at 66-70).

After reviewing the record, the ALJ concluded that Mr. Frederick was capable of performing a limited range of light work. In making this determination, the ALJ gave Drs. Fritz and Malek's opinions "little weight" because the ALJ believed that they were inconsistent with the record evidence. (R. at 27, 31). In determining the type of work Mr. Frederick could perform, the ALJ rested on the vocational expert's testimony that based strictly on the (relevant) hypothetical posed to him,[2] Mr. Frederick would not be able to perform his past work, but could perform unskilled work as a parking lot attendant, school crossing guard, and office helper. Accordingly, the ALJ found at step five that Mr. Frederick was not disabled.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668,

---

[2] The RFC was limited to unskilled light work free of production rate pace, tandem tasks, or teamwork, that involved no climbing of ladders, ropes, scaffolds, no crawling, no reaching overhead with the left dominant upper extremity, occasional climbing of ramps and stairs, occasional balancing, stooping, kneeling, and crouching, frequent handling and using the fingers of the left hand, and avoiding all exposure to hazards.

4

673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason

5

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are used in the following order:

> 1. Whether the claimant is currently engaged in substantial gainful activity;
>
> 2. Whether the claimant has a medically severe impairment;
>
> 3. Whether the claimant's impairment meets or equals one listed in the regulations;
>
> 4. Whether the claimant can still perform past relevant work; and
>
> 5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. *See* 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met, in between steps three and four, the ALJ must then assess the claimant's RFC, which, in turn, is used to determine whether the claimant can perform his past work under step four and whether the claimant can perform work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Mr. Frederick appeals the ALJ's failure to properly weigh the medical opinions. He also contends that the ALJ discredited Mr. Frederick's complaints of pain and limitations without relying on substantial evidence, and that the ALJ wholly failed to consider the testimony of Mr.

Frederick's wife. The Court need not address the latter issues with much detail, since remand is required on the first issue.

Disability cases typically involve three types of physicians: 1) a treating physician who regularly provides care to the claimant; 2) an examining physician who conducts a one-time physical exam of the claimant; and 3) a reviewing or non-examining physician who has never examined the claimant, but read the claimant's files to provide guidance to an adjudicator. *See generally* 20 C.F.R. § 404.1527(d). The opinion of the first type, a "treating physician," is ordinarily afforded special deference in disability proceedings.[3] The regulations governing social security proceedings instruct claimants to that effect:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2). However, while the treating physician's opinion is important, it is not the final word on a claimant's disability. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).

---

[3] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c; *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 81 FR 62560 at 62573-62574 (Sept. 9, 2016) ("we would no longer give a specific weight to medical opinions . . . this includes giving controlling weight to medical opinions from treating sources . . . [and] [w]e would not defer or give any specific evidentiary weight, including controlling weight, to any . . . medical opinion, including from an individual's own healthcare providers."). As Mr. Frederick's application was filed before March 27, 2017, the treating physician rule applies. *See id*. § 404.1527.

The treating physician's opinion is *not* entitled to controlling weight where it is not supported by the objective medical evidence, where it is inconsistent with other substantial evidence in the record, or where it is internally inconsistent. *See Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995)). Ultimately, an ALJ's decision to give lesser weight to a treating physician's opinion is afforded great deference so long as the ALJ minimally articulates his reasons for doing so. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). The Seventh Circuit has deemed this very deferential standard to be "lax." *Id.* Nevertheless, the ALJ must offer "good reasons" for discounting a treating physician's opinion. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

If the ALJ decides that the treating physician's opinion should not be given controlling weight, the ALJ is "required by regulation to consider certain factors in order to decide how much weight to give the opinion[.]" *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). These factors are set forth in 20 C.F.R. § 404.1527(c)(1)-(5) and include: 1) the "length of the treatment relationship and the frequency of examination;" 2) the "[n]ature and extent of the treatment relationship;" 3) "[s]upportability;" 4) consistency "with the record as a whole;" and 5) whether the treating physician was a specialist in the relevant area.

In this case, the ALJ assigned "little weight" to the opinions of treating physicians Drs. Fritz and Malek, who both opined that Mr. Frederick was so restricted that he was not able to work. In discounting these opinions, the ALJ relied in relevant part on the fact that two orthopedic specialists had released Mr. Frederick back to work without restrictions, and on the fact that records documented Mr. Frederick as "doing well," with good strength and the ability to walk with a normal gait. However, the ALJ's observations in this respect fail to account for an accurate characterization of the record.

The record reflects that in November 2012, Dr. Mencias released Mr. Frederick to "return to regular duty" after performing steroid injections for Mr. Frederick's carpel tunnel syndrome. (R. at 629). However, that same treatment record indicates that Mr. Frederick received no relief from the injection and that he continued to suffer from "persistent pain in both elbow[s], forearms, and wrists," and so he was being sent to a neurosurgeon. Similarly, Dr. Graham's December 2012 medical notes indicate that Mr. Frederick was released to regular work "from the perspective of his cervical spine." (R. 753). However, that same document indicates that Mr. Frederick was released from care despite "persistent pain in both elbow[s], forearms, and wrists." Thus, it was impermissible for the ALJ to "cherry-pick" these simple work release statements (spanning less than two months apart) as findings supporting non-disability without acknowledging evidence in the same records indicating that Mr. Frederick was still suffering from persistent pain and intended to seek further treatment. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

The problem is compounded by the ALJ's complete failure to acknowledge that only months after Drs. Mencias and Graham released Mr. Frederick from their care, Mr. Frederick's treating pain specialist, Dr. Ring, examined Mr. Frederick and opined that he had to remain off of work. Dr. Ring treated Mr. Frederick's overall body pain for the better part of 2013 and his medical records repeatedly document Mr. Frederick's suffering from chronic pain in various parts of his body. Yet, other than a passing reference to the fact that trigger point injections were administered, the ALJ made no mention of Dr. Ring or his opinions. Prior to discounting the opinions of Drs. Fritz and Malek as inconsistent with the record, it was incumbent upon the ALJ to at least acknowledge Dr. Ring's records which seemingly support the finding that Mr. Frederick was not able to work. 20 C.F.R. § 404.1527. Moreover, should the ALJ rely instead on

the opinions of state agents (as it did here with the opinions of Robert Bond and Joshua Eskonen from 2013), then the ALJ must supply a sufficient explanation for why those opinions are entitled to "great weight" despite pre-dating various medical records from these treating sources evidencing Mr. Frederick's chronic pain and resulting limitations. *See Staggs v. Astrue*, 781 F.Supp.2d 790, 794–96 (S.D. Ind. 2011) (finding that the medical record omitted from review provided "significant substantive evidence" regarding the claimant's medical impairments and that any medical opinion rendered without taking this record into consideration was "incomplete and ineffective."). Ultimately, the ALJ must provide a sound explanation for rejecting treating physician opinions over that of state agent opinions[4] and indicate how his assessment impacts the RFC determination. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *see* 20 C.F.R. § 404.1527. Because that was not done here, remand is required.

For the purpose of remand, the Court makes several additional observations. First, on remand, the ALJ should not discount the claimant's treating doctors' opinions based on Mr. Frederick's not having further surgical intervention, without first considering Mr. Frederick's testimony relative to his belief that the risks were too great to offset the small chance for success. (R. at 111). *See Thomas v. Colvin*, 534 F. App'x 546, 551–52 (7th Cir. 2013) (rejecting an ALJ's explanation that the claimant's "conservative treatment" was not what "one would expect" for someone with disabling pain, where the claimant had made "continuous efforts" to treat her back pain). Second, rather than wholly ignoring the testimony of Mr. Frederick's wife, the ALJ must at least acknowledge it and explain the weight assigned to it, especially given that it corroborated

---

[4] On remand, the ALJ must also reconcile the fact that the ME's testimony and disagreement with Dr. Fritz's most recent assessment of Mr. Frederick's limitations, inappropriately rested on the ME's futuristic outlook that Mr. Frederick had the "potential" for being an abled individual with further work hardening. (R. at 78-79).

Mr. Frederick's claim that he suffers from disabling symptoms. (R. at 125-29). *See* SSR 96-8p ("[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."). Third, in discrediting Mr. Frederick's complaints on account of medical records which report his condition as being "stable," the ALJ ought to pay particular attention to the fact that (as Mr. Frederick's counsel correctly points out), rather than indicating a normal result, the term is often used in medical records simultaneously noting that Mr. Frederick's "disabling" conditions have remained unchanged overtime. (R. 769-78). And finally, rather than referencing a lack of record evidence concerning Mr. Frederick's suffering from numbness and radiculopathy to find Mr. Frederick less than fully credible, it should be noted that medical records actually document those very complaints and an EMG/nerve study evidenced chronic L5-S1 radiculopathy.

Ultimately, the ALJ's failure to properly consider the evidence and adequately explain the basis for his conclusions, as identified herein, calls into question the soundness of the ALJ's RFC finding. In turn, the insufficiently supported RFC finding led the ALJ to ask hypotheticals of the VE which omitted claimed (and potentially credible) limitations caused by Mr. Frederick's chronic and well-documented problems with pain. For this reason, the VE's testimony cannot be relied upon as an accurate indicator for the type of work that Mr. Frederick is capable of performing.[5] *See Young v. Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004) (the ALJ must

---

[5] Admittedly, the Seventh Circuit has occasionally concluded that a VE has familiarity with the claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations and the VE considered that evidence when indicating the type of work the claimant is capable of performing. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, n. 5 (7th Cir. 2010) (citing *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Young*, 362 F.3d at 1003; *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Ragsdale v. Shalala*, 53 F.3d 816, 819-21 (7th Cir. 1995);

determine the claimant's RFC before performing steps 4 and 5 because a flawed RFC typically skews questions posed to the VE); SSR 96-8p. Thus, until the hypotheticals presented to the VE include the functional limits that the ALJ accepts as credible, and the ALJ adequately explains the claimant's actual limitations and resulting RFC based on the relevant medical evidence, 20 C.F.R. §§ 404.1545, 404.1546(c), step five cannot be affirmed in this appeal. *See Young,* 362 F.3d at 1003-05. The remedy for the shortcomings noted herein is further consideration, as requested by Mr. Frederick's counsel, not an award of benefits.

## IV. CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: December 20, 2017

          /s/ JON E. DEGUILIO
Judge
United States District Court

---

*Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992)). This exception does not apply here, since the VE never indicated having reviewed Mr. Frederick's medical records, nor did he indicate in his responses having relied on those records or the hearing testimony. Rather, the VE's attention was on the limitations of the hypothetical person posed by the ALJ, and not on the record itself or the limitations of the claimant himself. *Id.* (citing *Simila*, 573 F.3d at 521; *Young*, 362 F.3d at 1003).